1817.

*Lancaster.*          COLLINS and others *against* The Commonwealth.

*Monday,*
May 26.

IN ERROR.

An indictment charging a conspiracy to defraud by means of false pretences and false writings in the form and similitude of bank notes; and stating the overt act to consist in altering a note purporting to be a promissory note, &c. and to have been signed, &c. is sufficient. An overt act charged to be done by one conspirator, in pursuance of the conspiracy, is to be considered as the act of all.

It is not necessary in such indictment, to charge the actual defrauding of any person; passing, with intent to defraud, is sufficient.

Such conspiracy is punishable by hard labour, under the acts of 5th April, 1790, and 4th April, 1807.

3 SR 220
23 SC ¹490

ERROR to the Quarter Sessions of ·*Dauphin* county, upon an indictment and sentence against the plaintiffs in error, the defendants below, for conspiracy.

The indictment charged, that the defendants " falsely, " unlawfully, and wickedly did conspire, combine, confede- " rate and agree among themselves, to deceive and defraud, " and to cause to be deceived and defrauded, divers of the " citizens of the Commonwealth of *Pennsylvania,* of great " sums of money, *by means of false pretences,* and *false, ille-* " *gal,* and *unauthorised* paper writings, in the form and si- " militude of bank notes, which said paper writings were of " no value, and *purported to have been* promissory notes, " bearing different dates, for the payment of divers sums on " demand, by the *Ohio* exporting and importing company, " at their bank in *Cincinnati, and to have been signed* by *Z.* " *Sharp* as president, and *J. Lance* as cashier, when, in ve- " rity and truth, no such banking company existed, and that " according to, and in pursuance of the conspiracy, combi- " nation, confederacy, and agreement among themselves, had " as aforesaid, the said *Thomas Collins,* afterwards did frau- " dulently, unlawfully, and deceitfully, offer, and pay, to one " *Joseph Preston, for the purpose of deceiving and defraud-* " *ing him, the said Joseph,* for, and as a good, genuine, and " lawful bank note, one of the aforesaid false, illegal, and " unauthorised paper writings, in the form and similitude " of a bank note, partly written and partly printed, purport- " ing to be a promissory note for the payment of ten dollars, " by the *Ohio* exporting and importing company, to *N.* " *White,* or bearer, on demand, at their bank in *Cincinnati,* " bearing date the fifteenth ·day of *January,* in the year of " our Lord, one thousand, eight hundred and sixteen, and " *to have been* signed by *Z. Sharp,* as president, and *J.* " *Lance,* as cashier, he, the said *Thomas Collins,* did, then " and there, to wit, on, &c. well knowing, that no such bank

" existed at *Cincinnati*, or elsewhere, as the *Ohio* exporting " and importing company, and, that the said note, purporting " to be a bank note, issued by the said company, was of no " value, &c." Four other counts were laid, charging the defendants in the same manner, with passing other notes of the same description to other persons, in pursuance of the above conspiracy. The indictment did not conclude " against " the form of the act of assembly."

Upon this indictment, the defendants were convicted and sentenced to imprisonment at hard labour, in the penitentiary at *Philadelphia*, for two years and five calendar months.

1817.

COLLINS
and others
*v.*
The Com-
monwealth.

*Elder* and *Hopkins*, for the defendants, took two exceptions to the indictment and sentence. 1. The offence when analysed, consists in a mere averment of a falsehood; a naked lie; which is not indictable as a cheat. It is not alleged that the notes had any signature, or that they purported to be promissory notes, at the time of passing them. The allegation merely is, that they purported to *have been signed.* Unless owing to false representations, the papers were not such as would deceive any person of common prudence, and the law was not made to protect ideots. Nor is it stated, that any body was defrauded of money or other property. The passing of the note by *Collins* was an act for which the others were not responsible.

2. If this sentence rests on the act of assembly, it should conclude against the form of the act, in order to justify it. But, a conspiracy to cheat, is not within the act of 5th *April*, 1790, inflicting a punishment at hard labour. All the particular offences mentioned in that act being felonies, the subsequent general words must be limited to offences of like nature, viz. felonies.

*Irvine*, for the Commonwealth.
1. The offence was indictable at common law. It is a conspiracy to cheat the public, by tokens of a public nature. The mere conspiracy is an offence without any act. The use of false public tokens is punishable as a cheat at common law. The statutes were made to punish cheating by private tokens. 2 *East's Cr. Law*, 833.

2. The judgment was authorised by the act of assembly. The offence was formerly punishable by pillory, 2 *East's*

*Cr. Law*, 838, and is, therefore, included within the express provisions of the acts of 5th *April,* 1790, and 4th *April,* 1807.

TILGHMAN C. J. The plaintiffs in error, *Thomas Collins and others*, were convicted of a conspiracy to deceive and defraud divers citizens of the Commonwealth, of great sums of money, by means of false pretences, and false, illegal, and unauthorised paper writings, in the form and similitude of bank notes, which were of no value, and purported *to have been* promissory notes for the payment of divers sums of money, on demand, by " the *Ohio* exporting and importing " company," and *to have been* signed by *Z. Sharp*, as president, and *J. Lance*, as cashier, when, in fact, no such banking company existed. The indictment having charged the conspiracy as above-mentioned, proceeds to lay an overt act, by *Thomas Collins*, in pursuance of the said conspiracy, viz. that he did fraudulently, unlawfully, and deceitfully, utter and pay, to one *Joseph Preston, for the purpose of deceiving and defrauding him*, for, and as a good, genuine, and lawful bank note, one of the aforesaid illegal and unauthorised paper writings, in the form and similitude of a bank note, partly written, and partly printed, purporting *to be* a note for the payment of 10 dollars, by the *Ohio* exporting and importing company, &c. and *to have been signed* by *Z. Sharp*, as president, &c. The sentence passed upon the defendants was, that they should undergo a servitude in the jail and penitentiary house of *Philadelphia*, for two years and five calendar months, and be kept at hard labour, &c. It has been contended on their behalf, by their counsel, 1. That no indictable offence is charged. 2. That the judgment is contrary to law.

1. It is said, that it is no offence, to conspire to defraud people by notes purporting *to have been* promissory notes, and *to have been signed*, &c.; because nobody could be imposed on, unless the note purported *to be* a promissory note at the time of passing it. This is a new distinction. It would have been more proper to have said, purporting *to be* a promissory note, &c. ; but, as to the expressions, *to have been signed*, &c. they are strictly proper, because the act of signing was previous to the act of passing, and therefore, when passed, the notes did in truth purport, *to have been signed*. But there are other expressions charging an unlawful conspiracy ;

the plan is described, as an agreement, confederacy, &c. to
defraud by means of false pretences, and false writings, in
the *form and similitude of bank notes*, &c. so that upon the
whole, it sufficiently appears, that there was an unlawful con-
spiracy. Besides, the overt act is charged with strict pro-
priety ; the note uttered and paid to *Preston*, is described,
as purporting *to be a promissory note*, &c. and *to have been .
signed*, &c. But it is objected, that the passing of this note .
was the act of *Collins* alone, for which the other defendants
are not answerable. It would have been so, had it not been
done, in pursuance of the project in which they were all
engaged ; but it is laid in the indictment as having been
done, " according to, and in pursuance of the conspiracy,
" combination, confederacy, and agreement among them-
" selves, had, as aforesaid, &c." The act of one, therefore,
is to be considered as the act of all. It is also objected, that
it does not appear, that *Preston* was defrauded of any money,
or other property. That is of no importance, the note was
paid to him, *for the purpose of defrauding him*, which makes
the offence complete, whether he was actually defrauded or
not.

2. The judgment in this case, is warranted by the acts of
5th *April*, 1790, and 4th *April*, 1807, if the offence charged
in the indictment was punishable by *placing the offender in
the pillory*, prior to the " *act to amend the penal laws of this
" state*." That it was so punishable, there is not the least
doubt. The authority cited by the defendants' counsel, from
2 *East's Cr. Law*, 838, proves it. " In aggravated cases of
" cheating, corporal punishment may be inflicted." There-
is no vestige of authority to the contrary, and the Courts of
*Pennsylvania* have, in numerous instances, passed judgments
like the present, in similar cases. The law is well settled.
It has several times been decided by this Court, particularly
in the case of *Lewis* v. *The Commonwealth*, at *Chambersburg*,
last *September* Term. 2 *Serg. & Rawle*, 551.

I am, therefore, of opinion, that the judgment should be
affirmed.

GIBSON J. In this indictment the fact of confederating is
the gist of the offence. The overt acts charged to have been
done in pursuance of the conspiracy, are only matters of
aggravation, and not necessary to the consummation of the

crime; which would be well laid if all the overt acts were omitted. If this were an indictment for cheating, instead of conspiring to cheat, the argument in behalf of the defendant below, might possibly have weight: but I am not aware that in a case like the present, it is at all necessary to set out the false tokens or pretences with which the cheat was intended to be effected. A confederacy to cheat, generally, would be indictable before any means should be devised to carry the unlawful purpose into execution, *Regina* v. *Best*, 2 *Lord Raym.* 1167. And where the act is *unlawful*, there is no occasion to state the means by which it is to be effected; but where it only becomes illegal from the means employed to execute it, so much must be stated as will shew its illegality. In the Crown Circuit Companion, there is a precedent of an indictment against the curate and officers of a parish, for a conspiracy to cheat sufferers by fire, out of money collected by a brief for their use; in which the fraudulent intent is stated generally, without specifying any preconcerted means of carrying it into effect. And in 3 *Chitty*'s *Criminal Law*, 615, there is a count for a general conspiracy to defraud, without stating any overt act. But if it were necessary to set forth the nature of the false pretences, this indictment contains a sufficient description of them, even if the part objected to were struck out. To say that the defendant defrauded "divers of the citizens of *Pennsylvania* of great sums of money, by means of false pretences, and false, illegal, and unauthorized paper writings, in the form and similitude of bank notes, which paper writings were of no value," would be a sufficient description of the false pretences, in an indictment for cheating. But it is objected, that these writings are further described as purporting to *have been* promissory notes for the payment of money, and to *have been* signed, &c. without any averment that they were so at the time the confederacy was formed; and, consequently, that it does not appear that those writings, unaided by false representation, could be effectual instruments in the execution of the fraudulent design, which, if effected by a naked lie, would not be indictable as a cheat. But that conclusion does not follow. A counterfeit bank note, although without a signature, and, although it should not strictly purport to be a promissory note for the payment of money, may, very readily, be the successful means of perpetrating a fraud on the unwary, who

are as much under the protection of the law as the most acute. In *Gover's Case, Sayer, Rep.* 206. the defendant was indicted for cheating, by assuming the character of a merchant, and producing " to *I. S.* several paper writings, which he falsely affirmed to be letters from *Spain,* containing commissions for jewels, &c. to the amount of 4000*l.,* by means whereof he got into his hands two watches, the property of *I. S.*" without any distinct averment that the paper writings *purported* to be such; and it was held good. But taking it that the law would be otherwise, if this were an indictment for cheating; would a conspiracy be less criminal in legal estimation, because the means agreed on to carry the unlawful design into execution, were not like to prove effectual? It is no excuse for a conspiracy to carry on a malicious prosecution, that the indictment was defective, or that the Court before whom it was found, had no jurisdiction; although, in either case, the defendant never was in jeopardy. *Hawk. b. 1. c. 72. § 3.* The devising of means is not a constituent part of the offence, but an act done in pursuance of the original design. This remark also applies to the remaining objections, which relate to the manner of setting forth a variety of instances of fraud, *actually perpetrated* by means of the simulated paper writings before described; and not to the original hatching of the plot. On the second point I concur with the rest of the court: the law has been frequently settled as stated.

DUNCAN J. This is an indictment against the defendants for unlawfully conspiring, combining, confederating, and agreeing among themselves to deceive and defraud, and to cause to be deceived and defrauded, divers of the citizens of this Commonwealth, of great sums of money, by means of false pretences, and false, illegal, and unauthorised paper writings, in the form and similitude of bank notes, which said paper writings were of no value, and purported to have been promissory notes, bearing different dates, for the payment of divers sums of money, on demand, by the *Ohio* Exporting and Importing Company, at the Bank in *Cincinnati,* and to have been signed by *Z. Sharp,* as president, and *J. Lance,* as cashier, and that in pursuance of such conspiracy, combination, confederacy, and agreement, the said *Thomas Collins* did fraudulently, unlawfully, and deceitfully, utter

*1817.*

*COLLINS and others v. The Commonwealth.*

and pay to one *Joseph Preston*, for the purpose of deceiving and defrauding him, for, and as a good and genuine and lawful bank note, one of the aforesaid false, illegal, and unauthorized paper writings, in the form and similitude of a bank note, partly written, and partly printed, purporting to be a promissory note for the payment of 10 dollars, by the *Ohio* Exporting and Importing Company, to *N. White* or bearer, on demand, at the bank in *Cincinnati*, bearing date 15th *January*, 1816, and to have been signed by *Z. Sharp*, as president, and *J. Lance*, as cashier, he, the said *T. Collins*, the defendant, well knowing that no such bank existed at *Cincinnati*, or elsewhere, as the *Ohio* Exporting and Importing Company, and that the said note purporting to be a bank note, issued by the said company, was of no value ; and then proceeds to state several other acts of passing divers notes of this description to other persons.  The court sentenced the defendant to undergo a servitude in the jail and penitentiary house of *Philadelphia*, for two years and five calendar months, and be confined, fed and clothed, as by law is directed, &c.

It is objected, that the fact as charged is not indictable. That the sentence is erroneous. The objection is, that the indictment states, that the notes purported to have been signed and to have borne date at different days, in the past tense, and though they might have purported to be so, that it did not necessarily follow that they were so, when they were uttered and passed. The conspiracy was " to cheat and defraud, by certain papers, purporting to have been signed by certain persons, and at certain times ; and that *Collins*, in pursuance of this conspiracy, did utter and pay these papers, purporting to have been so signed, and so to bear date ;" this appears to me a sufficient and satisfactory setting forth of these papers.  It was not necessary to set them forth verbatim, it was only necessary to state what they purported to be.  The allegation is, that they purported to be what they were not.  That is the substance of the offence, and it is substantially charged.  It is again objected, that the act done by *Collins*, is not the act which the defendants are alleged to have conspired to do.  Now the conspiracy was to deceive and defraud divers citizens of this commonwealth, by means of these papers, and the charge is, that *Collins* did, in pursuance of such conspiracy, &c. utter and pay ; the overt act laid, was the act they combined to do.  It was not

a conspiracy to commit one act of fraud on an individual, but on all on whom they could practise this imposition. It is further objected, that no actual fraud is alleged to have been perpetrated; the act of fraud was his uttering and paying these notes; they were uttered and paid as good and genuine notes of a certain bank, the defendant well knowing there was no such bank.

The sentence appears to me to be strictly conformable to the law. Cheats, before the passing of the acts to amend the penal laws, were, at the discretion of the Court, punished by placing in the pillory, or other infamous punishment; this is the appropriate punishment of every *Crimen falsi*, as conspiracies, perjuries, forgeries, aggravated cheats. *The King* v. *Ward*, 2 *Lord Raym.* 1461. Any deceitful practice in cozening another by artful means, is punishable with fine, imprisonment, and pillory. 1 *Hawk. P. C.* 182.

Of all species of cozening, this of which the defendants are convicted, is the most atrocious. Most frauds consist in solitary acts of swindling; but offences of this nature, from their extent, exceed all others in atrocity. Before the act to reform the penal laws of this state, the pillory, or other infamous punishment, must have been inflicted; instead of the pillory, by that act confinement at hard labour, is the punishment prescribed.

Judgment affirmed.